JACKSON CASKET & MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5610.   Promulgated September 1, 1927.

1. The deduction from gross. income of a reserve for cash discounts and freight charges disallowed.

2. The record herein presents no evidence of any abnormality in capital or income which would entitle the petitioner to have its taxes computed under the provisions of section 328 of the Revenue Act of 1918.

*Garner W. Green, Esq.*, for the petitioner.
*W. F. Wattles, Esq.*, for the respondent.

This proceeding seeks the redetermination of a deficiency of $14,780.44 in income and profits taxes for 1918, and alleges that the respondent's determination is based upon the following errors: (1)

Addition to income of $12,515.53 set aside as a reserve for cash discounts and freight allowances; and (2) refusal to grant special assessment under the provisions of section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

Petitioner, a Mississippi corporation with its principal office at Jackson, was, during the year in issue, engaged in manufacturing and selling caskets for burial purposes.

Goods were billed to purchasers on the basis of a cash discount if paid within 30 days, freight charges paid by purchasers to be deducted from invoice prices in making remittances.

It has been the petitioner's accounting practice, at least since 1910, to set aside at the close of each month, as a reserve, a percentage of the sales made during the month to cover the cash discounts and freight allowances on those sales. The percentage set aside as a reserve for cash discounts and freight allowances was uniform throughout the year, but varied as between years, and it was determined upon the basis of past experience. As allowances for cash discounts and freight charges were made to customers, the amounts thereof were charged against the reserve. On several occasions the balance in the account at the close of the year was deemed to be in excess of that required to cover allowances which would be made in respect of the sales of that year, in which event the excess was charged against the reserve and credited back to profit and loss. As to this accounting practice, petitioner's books of account show the following:

| Year | Total sales | Gross amount set aside to reserve | Credited back to profit and loss | Net amount set aside to reserve | Percentage of sales represented by net reserve |
|---|---|---|---|---|---|
| 1911 | $154,524.75 | $25,798.72 | | $25,798.72 | 16.7 |
| 1912 | 151,518.65 | 22,731.20 | | 22,731.20 | 15.0 |
| 1913 | 144,608.92 | 21,687.57 | $3,438.45 | 18,249.12 | 12.6 |
| 1914 | 139,468.93 | 20,915.85 | 768.27 | 20,147.58 | 14.5 |
| 1915 | 139,300.33 | 20,996.78 | 3,944.17 | 17,052.61 | 12.2 |
| 1916 | 162,319.73 | 19,480.56 | 1,108.75 | 18,371.81 | 11.3 |
| 1917 | 227,749.15 | 27,329.55 | 3,064.42 | 24,265.13 | 10.6 |
| | 1,119,490.46 | 158,940.23 | 12,324.06 | 146,616.17 | 13.1 |
| 1918 | 354,885.19 | 43,604.23 | | 43,604.23 | 12.3 |
| 1919 | 370,557.41 | 21,902.58 | | 21,902.58 | 5.9 |
| 1920 | 314,239.54 | 18,187.08 | | 18,187.08 | 6.0 |
| 1921 | 230,175.21 | 14,508.12 | | 14,508.12 | 6.3 |
| | 1,269,857.35 | 98,202.01 | | 98,202.01 | 7.7 |

| Year | Discount and freight allowances actually made | Percentage of sales represented by actual allowances | Accounts receivable at close of year | Amount of reserve at close of year | Percentage of accounts receivable in reserve at close of year |
|---|---|---|---|---|---|
| 1910 | | | $23,795.14 | $1,764.59 | 7.4 |
| 1911 | $20,658.09 | 13.3 | 32,297.70 | 6,905.22 | 21.5 |
| 1912 | 21,797.24 | 14.4 | 35,717.82 | 7,838,48 | 22.3 |
| 1913 | 21,507.08 | 14.8 | 31,895.26 | 4,580.52 | 14.3 |
| 1914 | 19,063.01 | 13.7 | 35,797.81 | 5,665.09 | 15.8 |
| 1915 | 17,052.61 | 12.2 | 36,796.87 | 5,665.09 | 15.4 |
| 1916 | 18,371.81 | 11.3 | 44,623.42 | 5,665.09 | 12.7 |
| 1917 | 23,530.22 | 10.3 | 54,792.88 | 6,400.00 | 11.7 |
| | 141,980.76 | 12.7 | | | |
| 1918 | 31,088.70 | 8.7 | 54,560.03 | 18,915.53 | 34.6 |
| 1919 | 24,672.61 | 6.6 | 47,309.06 | 16,145.50 | 34.1 |
| 1920 | 19,686.90 | 6.3 | 45,963.76 | 14,645.68 | 31.9 |
| 1921 | 20,320.83 | 8.8 | 44,845.24 | 8,832.97 | 19.7 |
| • | 95,769.04 | 8.6 | | | |

In 1918 petitioner's sales were greater than for any preceding year and this was due to the demand for caskets and supplies incident to the ravages of the influenza epidemic. The demand for caskets and supplies became so urgent that customers directed shipment by express and most of the shipments made by petitioner in 1918 were made in that way. In the case of orders shipped by express, customers were allowed the usual cash discount, if remittance was made within the required time, but no allowance was made to them for the express charges which they paid.

In the early part of 1918 freight rates on the class of goods produced by the petitioner were increased 25 per cent. Some time in 1918 the cash discount allowed to customers was reduced from 5 per cent to 2 per cent. At the close of each month of 1918 there was set aside to the reserve for cash discounts and freight allowances 12.3 per cent of the sales made during the month. The total set aside to reserve in that year was $43,604.23, which the petitioner deducted in arriving at net income. The total cash discounts and freight allowances actually made to customers in 1918 was $31,088.70. During the succeeding three years, numerous claims were made by customers for freight allowances on shipments made in 1918. In arriving at net income shown in the deficiency notice, respondent allowed as a deduction the total cash discounts and freight allowances made in 1918, to wit, $31,088.70, in lieu of the deduction taken by petitioner, to wit, $43,604.23, thereby increasing net income $12,515.53.

OPINION.

MARQUETTE: Whatever may be said as to the consistency with which petitioner has followed the method of accounting employed in its business, which. includes the practice of setting aside each month a reserve to cover anticipated cash discounts and freight

allowances to customers, the fact is that taxable net income is not clearly reflected by that method and, for the year on appeal, it must give way to one which will clearly reflect the income. A reserve of the character which the petitioner seeks to deduct from income is a contingent liability, at least to the extent that it includes anticipated cash discounts, and its deduction in arriving at net income is not authorized by the statute. *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79; *Appeal of Uvalde Co.*, 1 B. T. A. 932; *Appeal of Morrison-Ricker Manufacturing Co.*, 2 B. T. A. 1008; *Appeal of Thatcher Medicine Co.*, 3 B. T. A. 154. There is no evidence before us showing the amount of freight allowances made in subsequent years on shipments of 1918, or of the extent of the petitioner's liability for freight allowances at the close of 1918. The petitioner has not shown that the obligations which it paid or incurred in 1918, by reason of cash discounts and freight allowances to customers, were greater than the deduction which the respondent has allowed.

The petitioner has presented no evidence which indicates any abnormality in income or capital for 1918. Its taxes for that year were high, but high taxes, without any showing of abnormality, are not sufficient reason for special assessment. Its sales for 1918 were greater than those of any preceding year because of the epidemic emergency, but there is no proof that this effected any abnormality in net income. High taxes and unusually large sales are the two grounds upon which petitioner seeks relief under the provisions of section 328 of the Revenue Act of 1918, but there is no proof of any abnormality which might entitle it to the relief which it seeks.

Reviewed by the Board.

*Judgment will be entered for the respondent.*